### Lonnie Bell v. The State.

#### No. 886. Decided May 3, 1911.

**Occupation—Selling Intoxicating Liquors—Local Option—Negative.**

Upon trial for pursuing the occupation of selling intoxicating liquors in local option territory, where the State showed that local option was in force; that defendant had made sales of intoxicating liquors and was pursuing that business or occupation, it made a prima facie case, and it was not necessary or incumbent upon the State to show that defendant did not have a license to sell on prescription, etc., or to show any of these negative matters; as this was a matter of defense, and if true peculiarly within the knowledge of the defendant and incumbent on him to prove. Following Duke v. State, 42 Texas, 455, and other cases. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Camp. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of unlawfully carrying on the business of selling intoxicating liquors in local option territory; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*M. M. Smith,* for appellant.—Cited Duke v. State, 42 Texas, 455; Keith v. State, 58 Texas Crim. Rep., 418; Fitch v. State, 58 Texas Crim. Rep., 366.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—In this case the appellant was prosecuted for pursuing the occupation of selling intoxicating liquor in Camp County, local option being in force in said county. Upon a trial he was convicted, and his punishment assessed at three years confinement in the penitentiary.

The only assignment of error is that "the verdict and judgment is contrary to the law and the evidence." The indictment is in accordance with the form approved by this court in Mizell v. State, 59 Texas Crim. Rep., 226, 128 S. W. Rep., 125. Local option is shown to be in full force in said county; a number of sales being proven, and the court having properly submitted the offense charged, the judgment, in our opinion, should be affirmed. However, under the contention that the evidence is insufficient to sustain a conviction, the contention is

made that, although the State proved a number of sales of whisky, yet as the State did not show that defendant did not have a license to sell on prescription, and said sales were not made on prescription, the conviction should be set aside. The evidence would exclude any such idea, as the whisky was sold in the highways and byways, and in dark corners, but we hold that it is not necessary or incumbent upon the State to show any of these negative matters. Such provisions are matters of defense, and if a sale is made under such conditions, it being peculiarly within the knowledge of the defendant, it is incumbent upon him to make the proof. When the State has shown that local option is in force—that defendant has made sales of intoxicating liquors, and is pursuing that business or occupation—it has made a prima facie case.

In the case of Duke v. State, 42 Texas, 455, when our Supreme Court had jurisdiction of criminal matters, it held that under the peculiar wording of the statute at that time it was necessary in the indictment to make the negative averments, but as these negative matters "being averments of facts peculiarly within defendant's knowledge, so that he would have no difficulty in showing the truth, no proof of such averments on the part of the State would be required. In the absence of proof, the presumption would be against the existence of facts so exceptional in their nature." This holding is approved in Summerlin v. State, 3 Texas Crim. App., 446, the court saying: "That defendant was not a peace officer at the time, being an averment of fact peculiarly within defendant's knowledge, so that he could have no difficulty in showing the truth, no proof of such averments on the part of the State would be required," citing Commonwealth v. Hart, 11 Cush., 130. In Stoneham v. State, 3 Texas Crim. App., 594, this court holds: "When the State has adduced sufficient proof to sustain a conviction the accused has the burden of establishing any excuse, justification or explanation." Again, in Leatherwood v. State, 6 Texas Crim. App., 244, the ruling in Duke v. State, supra, is approved, the decision saying: "The information attempts, by proper negative averments, to allege that accused did not come within any of the exceptions mentioned in the statute. It is intimated in the motion for a new trial, that the State failed to prove that the defendant did not come within these exceptions. This position is untenable." And it is held that it is not required that the negative averments should be proved by the State. See also Lewis v. State, 7 Texas Crim. App., 567; Leonard v. State, 7 Texas Crim. App., 417.

Our penal Code provides that it shall be unlawful to sell intoxicating liquors to a minor except upon the written consent of the parent, all being embodied in the same article. The contention is made that the exception being a part of the same article of the Code, and not in a separate provision, it was incumbent upon the State to prove want of consent. In Reynolds v. State, 32 Texas Crim. Rep., 36, Judge Hart, speaking for the court, says: "The second assignment

presents the question, Must the State prove the accused did not have the written order from the parent or guardian, or must the accused produce or establish the fact that he had such order? After mature reflection we are of opinion that the burden is on the accused." This is approved in Jones v. State, 32 Texas Crim. Rep., 108; Kuhn v. State, 34 Texas Crim. Rep., 85; Partin v. State, 30 S. W. Rep., 1067.

In volume 4 of the second edition of American and English Encyclopedia of Law we find the following text laid down, citing the authorities named:

"Upon a charge of a sale of liquors or merchandise without a license as required by law, the burden has been held to be on the defendant to show a license; for if he have a license, that is a fact peculiarly within his knowledge, as proof of it can be more easily made than proof of the negative can be by the prosecution. Farrall v. State, 32 Ala., 557; Williams v. State, 35 Ark., 430; Sharp v. State, 17 Ga., 290; Conyers v. State, 50 Ga., 103, 15 Am. Rep., 686; Noecker v. People, 91 Ill., 468; Gunnarssohn v. Sterling, 92 Ill., 569; Flora v. Lee, 5 Ill. App., 629; Shearer v. State, 7 Blackf. (Ind.), 99; Howard v. State, 5 Ind., 516; Taylor v. State, 49 Ind., 555; State v. Stapp, 29 Iowa, 551; State v. Curley, 33 Iowa, 359; Haskill v. Com., 3 B. Mon. (Ky.), 342; State v. Woodward, 34 Me., 293; State v. Crowell, 25 Me., 171; Smith v. Adrian, 1 Mich., 495; State v. Schmail, 25 Minn., 370; Easterling v. State, 35 Miss., 210; Schmidt v. State, 14 Mo., 137; State v. Edwards, 60 Mo., 490; State v. Foster, 23 N. H., 348, 55 Am. Dec., 191; State v. McGlynn, 34 N. H., 422; Bliss v. Brainard, 41 N. H., 256; State v. Morrison, 3 Dev. L. (N. Car.), 299; State v. Cutting, 3 Oregon, 260; Gueing v. State, 1 McCord L. (S. Car.), 573; Information against Oliver, 21 S. Car., 318, 53 Am. Rep., 681; Matter of Barrett, 28 U. C. Q. B., 559; Ex parte Parks, 8 New Bruns., 237."

Again the same work says: "Where the means of proving the negative are. not within the power of the party alleging it, but all the proof on the subject is within the control of the opposite party, who, if the negative is not true, can disprove it at once, then the law presumes the truth of the negative averment from the fact that such opposite party withholds or does not produce the proof that it is within his hands, if it exists, that the negative is not true, citing Sunderland Marine Ins. Co. v. Kearney, 16 Q. B., 925 (Eng.), 71 E. C. L., 925; Rex v. Burdett, 4 B. & Ald., 95 (Eng.), 6 E. C. L., 404; Rex v. Turner (Eng.), 5 M. & S., 206; Small v. Balyea (Can.), 24 New Bruns., 16; Great Western R. Co. v. Bacon, 30 Ill., 347, 83 Am. Dec., 199; State v. Crowell, 25 Me., 171; People v. Swineford, 77 Mich., 573, citing 2 Am. & Eng. Ency. of Law (1st ed.), 652; State v. Lipscomb, 52 Mo., 32; State v. Richeson, 45 Mo., 575; State v. McDuffie, 107 N. Car., 885; Govan v. Cushing, 111 N. Car., 458."

In "Cyc." it is said: "Where the subject matter of a negative averment in the indictment, or a fact relied upon by defendant as a

justification or excuse, relates to him personally or otherwise lies peculiarly within his knowledge, the general rule is that the burden of proof as to such averment or fact is on him," citing Ake v. State, 6 Texas Crim. App., 398, and authorities from nearly every State in the union. In the Ake case, supra, is a collation of the authorities on this subject.

Article 52 of our Penal Code reads: "On the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission." Under this article of White's Penal Code will be found cited numerous authorities in which it is held that these are matters of defense, and it is not incumbent upon the State to make any proof in regard thereto. Not only is this the rule in this State, but from an examination of the authorities we find that this is true of almost every State in the union.

In the case of People v. Boo Doo Hong, 122 Cal., 607, the Supreme Court of that State holds: "At the trial uncontradicted evidence was introduced by the prosecution sufficiently showing that for several months prior to the filing of the information defendant had been practicing medicine at Red Bluff, in the county of Tehama (People v. Lee Wah, 71 Cal., 80), but no evidence was introduced on either side showing, or tending to show, that defendant had or had not a certificate to so practice, as required by law. (Stats. 1875-76, p. 792; Stats. 1877-78, p. 918.) And at the conclusion of the evidence the court instructed the jury quite fully upon all the questions of law involved in the case, and, among other things, told them, in effect, that the burden was upon the defendant to establish that he had a certificate to practice medicine as provided by law, and if he failed to prove that he had such certificate, then it must be taken as true that he had not procured a certificate to so practice medicine.

"It is contended for appellant that the said instruction was erroneous and misleading, and that the verdict was not justified by the evidence, because in a criminal action the defendant is presumed to be innocent until he is proved guilty beyond a reasonable doubt, and this presumption continues through the entire trial, and the burden is upon the people to establish his guilt by proving every material allegation of the information, and that as the information charged that defendant had practiced medicine without having a certificate to do so, it devolved upon the people to prove that fact, and having entirely failed to offer any such proof, he ought not to have been convicted, and his motion for new trial should have been granted.

"The general rule is undoubtedly as above stated, but there is a well-recognized exception to the rule, where there is a negative averment of a fact which is peculiarly within the knowledge of the defendant.

"Mr. Greenleaf, in his work on Evidence, volume 1, section 79, un-

der the heading 'Negative Allegations,' says: 'But when the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons except those who are duly licensed therefor, as for selling liquors, exercising a trade or profession, and the like. Here the party, if licensed, can immediately show it without the least inconvenience; whereas, if proof of the negative were required, the inconvenience would be very great.' (Citing a large number of cases. See also 3 Rice on Evidence, section 260, where the same rule is declared.)

"In 1 Jones' Law of Evidence, section 179, under the heading 'Burden as to Particular Facts Lying Peculiarly Within Knowledge of a Party,' it is said: 'This is often illustrated in prosecutions for selling liquors or doing other acts without the license required by law. By a few authorities the rule is prescribed that in such cases the prosecution must offer some slight proof of the fact that no license has been granted, for example, by producing the book in which licenses are recorded; and, if the book fails to show that a license has been granted, the burden is shifted upon the defendant to prove the fact claimed by him; but the greater number of authorities hold that where a license would be a complete defense the burden is upon the defendant to prove the fact so clearly within his knowledge.' (Citing cases.)"

In Arkansas it is held, Cleary v. State, 56 Ark., 124: "The exceptions in a penal statute, which are required to be negatived, are such as are so incorporated with and a part of the enactment, as to constitute a part of the definition or description of the offense. (State v. Abbey, 29 Vt., 60.) Not all labor on the Sabbath is forbidden by the statute, but only that which is in the performance of customary household duties, of daily necessity, comfort or charity. Such labor, not in the discharge of household duties, as is a necessary incident to the accomplishment of a lawful purpose, is not a violation of the statute. (Crocket v. State, 33 Ind., 416.) It is a general rule that that which must be stated as a part of or a necessary description of a penal offense in an indictment, must be proven by the prosecutor. It is a general rule of evidence that where the negative of an issue does not permit direct proof, or where the facts come more immediately within the knowledge of the defendant, the *onus probandi* rests upon him. The State, for instance, is not required to prove that one who sells spirituous liquors has no license. When the State made a prima facie case in the cause at bar by proving that the defendant performed labor on Sunday not apparently a work of necessity, the burden was then upon the defendant to show that the labor was a work of necessity—that his case came within the exception in the statute. Fleming v. People, 27 N. Y., 334."

In Vermont it was held, in State v. Abbey, 29 Vt., 60: "The fifth section of the Act on which this indictment is drawn contains the en-

acting clause in which the exceptions are made of those cases which are specified in the sixth section. The cases excepted do not define or qualify the offense created by the enacting clause. If the facts are alleged in the indictment, and proved on trial, that the respondent had a former husband or wife living, and married another person, or continued to cohabit with such second husband or wife in this State, the offense is fully made out. A prima facie case is stated and proved. If, in fact, the former husband or wife of the respondent had been continually beyond the sea, or out of the State for seven years together, and the respondent had married again, not knowing the other to be living within that time, or if the respondent had been divorced, or the marriage had been declared null and void by the sentence of the court, or if the former marriage was within the age of consent, and not afterwards assented to, those facts should be relied upon and proved by the respondent in his defense. As was observed by the court in the case of State v. Barker, 18 Vt., 197, 'the facts are peculiarly within the knowledge of the respondent,' and the onus of their proof should rest on him.

"The sixth section declares that: 'The provisions of the preceding section shall not extend to any person,' etc. This is strictly an exception, and 'that which is excepted out of an Act is out of its provisions;' as much so as if the Act had never been passed. Cases excepted from the Act necessarily do not define, qualify, or in any way affect the provisions of the enacting clause. It is a statutory provision overriding the whole Act, that to those cases the Act does not extend. In such cases exceptions need not be negatived, but are to be treated as matters of defense, and are to be relied upon by the respondent as such. Lawton v. Hickman, 9 Adol. & Ellis, N. S., 563; 58 Eng. Com. Law, 561, 588; Thibault v. Gibson, 12 Mees. & Wels., 88, and note; Simpson v. Ready, ib. 734. The difficulty and impracticability arising from a different construction of the Act is itself a good reason why it should not be adopted; particularly as all the matters embraced in those exceptions are peculiarly within the knowledge of the respondent."

In Illinois it was held, in the case of Williams v. The People, 121 Ill., 84: "When the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any person except those who are duly licensed therefor, as, for selling liquor, exercising a trade or profession, and the like. People v. Nedrow, 16 Bradw. 192; 1 Greenleaf on Evidence, section 79, p. 92; Great Western Railroad Co. v. Bacon, 30 Ill., 347; Harbaugh v. Town of Monmouth, 74 id., 367; Noelke v. People, 94 N. Y., 137; Town of Flora v. Lee, 5 Bradw., 629."

In Missouri it was held in the case of State v. Lipscomb, 52 Mo., 32: "A license must be shown by the party claiming its protection.

When the subject matter of the negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. Such is the case in civil or criminal prosecution for a penalty for doing an act which the statutes do not permit to be done by any persons except those who are duly licensed therefor, as for selling liquors, exercising a trade or profession, and the like. Hence the party, if licensed, can show it . without the least inconvenience. (See 1 Green. Ev., section 79; 10 Mo., 591.) The indictment charges that a sale was made in June, 1871, and the evidence, introduced by the State sustains the allegation."

In New Hampshire it was held, in State v. McGlynn, 34 N. H., 426: "The next exception taken was that the indictment, having alleged that the respondent was not an agent for the sale of liquor, the State was bound to prove that fact.

"In many cases negative averments and allegations, being of the essence of the offense or of the ground of action, must be proved. But where the subject matter of a negative averment relates to the defendant personally, or is peculiarly within his knowledge, the averment will be taken as true unless disproved by him. Rex v. Turner, 5 M. & S., 206; United States v. Hayward, 2 Gall., 485; Shelden v. Clarke, 1 Johns., 513; 1 Greenl. Ev., section 79.

"This rule was sanctioned in this State in the case of State v. Foster, 3 Foster, 348, on an indictment for a breach of the license laws; the indictment alleging that the respondent, not being licensed, etc., sold, etc., and no evidence being offered that the defendant had not a license. The court in that case held that it was unnecessary to prove the averment.

"The present case falls within that rule. The statute provides that no person not being an agent shall sell, etc., and the former statute provided that no person not being licensed, etc., shall sell. The averments upon both statutes upon this point are negative in their character, but the subject matter of the same lies peculiarly within the knowledge of the defendants. They stand upon the same principle, and this exception can not prevail."

In New York it was held in People v. Nyce, 41 N. Y. Sup. Ct., 298 (34 Hun, 298): "On the trial the defendant admitted the fact that he had practiced medicine at the time and place charged in the indictment; whereupon the district attorney rested the case. The defendant then moved for his discharge on the ground that mere proof that he practiced medicine was insufficient to convict him of so practicing without a license. The court denied the motion. To practice medicine without a license or diploma, issued or granted to the practitioner, as the law requires, is declared a misdemeanor, and is punishable as such. It being then proved or admitted that the defendant practiced medicine, it was incumbent on him, in order to avoid the penalty imposed for the alleged unlawful act, to show that he did so under the protection of a license or diploma. The burden of proof

was on him to show his justification. It has been so decided in many instances in analogous cases where persons were charged with selling liquor without license so to do. (Potter v. Deyo, 19 Wend., 361; The People v. Quant, 2 Park. C. R., 410; The Mayor v. Mason, 1 Abb. Pr., 344.)"

See also authorities cited under section 721, Criminal Law, Cent. Dig., and the cases of Dozier v. State, and Slack v. State, decided at this term of court.

We could extend the citation of authorities at length, but deem it unnecessary. The judgment is affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE (dissenting).—My brethren affirmed the judgment holding the facts sufficient. From this I dissent. It is the rule that in statutory offenses the indictment must set out by proper averment every ingredient of the offense sought to be charged. This is now and has always been the rule without interruption in Texas, from Bush v. Republic, 1 Texas Rep., 455, and Burch v. Republic, in the same volume, page 608, to and inclusive of Keith v. State, 58 Texas Crim. Rep., 418; Snead v. State, 55 Texas Crim. Rep., 583, and Sutphen v. State, 59 Texas Crim. Rep., 500, 129 S. W. Rep., 144. This is not only true, but the unbroken line of authorities lay down, affirm and enforce the further proposition that the Legislature is without authority to dispense with any necessary allegation in the indictment. These propositions I hardly think would be denied by any lawyer, nor do they need supporting authorities. However, I will call attention to a few of the cases: Hewitt v. State, 25 Texas, 722; State v. Wilburn, 25 Texas, 738; Horan v. State, 25 Texas Sup., 271; Huntsman v. State, 12 Texas Crim. App., 619; Williams v. State, 12 Texas Crim. App., 395; Rodriguez v. State, 12 Texas Crim. App., 552; Brinster v. State, 12 Texas Crim. App., 612. There are so many of these cases that I think it unnecessary to further enumerate them.

It was expressly held in the Hewitt case, supra, that the Legislature could not dispense with necessary allegations setting out statutory offenses. That opinion was written by Judge Roberts. The Huntsman case reviewed at length the question, and reaffirmed the same principle. That opinion was written by Judge Hurt. I might say without fear of contradiction that the jurisprudence of this or any other country has not furnished the names of greater judges than Roberts and Hurt, and I had thought since the opinions in the Hewitt and Huntsman cases that the proposition therein asserted was finally and conclusively settled.

There is another settled rule in this State, as everywhere, so far as I am informed in criminal jurisprudence; that is, whatever is necessary to be proved must be alleged in the indictment. This is statutory in Texas. Code of Criminal Procedure, article 440. And for the purposes of this opinion I may say that this means the essential ingre-

dients or elements of the offense for which the conviction is sought. I shall only cite a few authorities to sustain this proposition. 9 App., 567; 8 App., 127; 3 App., 605; 17 App., 185; 38 App., 124; 2 Bish. Proc., 3d ed., sec. 325.

It is equally as well settled where exceptions are set out in the enacting clause, these are elements of the offense, a part of its definition, and descriptive, and must, therefore, be averred in the indictment. Keith v. State, 58 Texas Crim. Rep., 418; Snead v. State, 55 Texas Crim. Rep., 583; Fleeks v. State, 47 Texas Crim. Rep., 327; Bice v. State, 37 Texas Crim. Rep., 36; Sutphen v. State, 59 Texas Crim. Rep., 500, 129 S. W. Rep., 144.

Our reports are filled with these cases, but these are thought sufficient in number to support the proposition without citing others.

There is another rule, to wit: Where the exceptions are not in the enacting clause, the above rule does not usually apply. With this latter proposition in any of its phases I do not purpose in this opinion to deal. It is not called for, because the exception in the statute under which this prosecution is had is in the exacting clause, and is a part of the definition of the offense and descriptive of it. Where these exceptions are in the enacting clause they have universally been held to be descriptive of the offense and form essential elements in its definition. Construing the statute under consideration, Judge Ramsey laid down this rule in the Keith case, supra, as did Judge McCord in the Sutphen case, supra, and the rule in those cases was held to directly apply to this statute. Both of those cases were reversed because the indictment did not negative the exceptions. In the Keith case Judge Ramsey referred to the Sneed case, supra. He also wrote the opinion in the Sneed case, and elaborately reviewed the question. I do not care to enter into a review of those cases. They speak for themselves. Judge McCord wrote also the Mizell case prior to writing the Sutphen case.

Again, it has been held, as before stated in this State, that exceptions found in the enacting clause of a penal statute must be negatived in the indictment charging the offense, for the very simple reason that such exceptions constitute a part of the description and definition of the offense, and unless negatived no offense is stated. State v. Smith, 24 Texas, 285; Hewitt v. State, 25 Texas, 722; Duke v. State, 42 Texas, 455; State v. Clayton, 43 Texas, 410; Lewis v. State, 2 Texas Crim. App., 26; Owens v. State, 3 Texas Crim. App., 404; Summerlin v. State, 3 Texas Crim. App., 444; Blasdell v. State, 5 Texas Crim. App., 263; Leatherwood v. State, 6 Texas Crim. App., 244; Lewis v. State, 7 Texas Crim. App., 567; Brown v. State, 9 Texas Crim. App., 171; Zallner v. State, 15 Texas Crim. App., 23; Mosely v. State, 18 Texas Crim. App., 311; Colchell v. State, 23 Texas Crim. App., 584; Rice v. State, 37 Texas Crim. Rep., 36; Rice v. State, 37 Texas Crim. Rep., 38; Edwards v. State, 37 Texas Crim. Rep., 242; Dudley v. State, 37 Texas Crim. Rep., 543; Salter v. State,

44 Texas Crim. Rep., 591; Borders v. State, 66 S. W. Rep., 1103; Snead v. State, 55 Texas Crim. Rep., 583; Keith v. State, 58 Texas Crim. Rep., 418; Sutphen v. State, 59 Texas Crim. Rep., 500, 129 S. W. Rep., 144. While many other cases could be cited, I think these are sufficient to sustain the proposition stated, but will cite in addition to the above Byrd v. State, 59 Texas Crim. Rep., 513, 129 S. W., 620.

It is also well settled that the indictment must charge an offense, and admitting everything stated in the indictment to be true, that instrument does not set out the offense, then the accused can not be convicted. No offense is charged. This is axiomatic. Applying the above rules to the indictment in this case and under the statute which appellant was tried, there are four elements absolutely necessary to be averred and proved: First, that appellant was pursuing the occupation or engaging in the business of selling intoxicants; second, that this occurred in local option territory; third, that the accused must make at least two actual sales, and these must be pleaded specifically; fourth, that he was not authorized by law to pursue said occupation or engage in said business. And failure to aver and prove each of these and all of them would clearly entitle the accused to a verdict of not guilty under the authorities already cited. So it is beyond question that the definition, ingredients and elements of the offense must not only be averred in the indictment, but the State must prove them in order to secure a verdict. I deem it unnecessary to cite or discuss authorities to sustain the proposition that descriptive allegations must be also proved as alleged. A great number of cases are collated on page 20, subdivision 8 of White's Enlarged Penal Code.

I do not care here to discuss the sufficiency of the allegations in the indictment negativing the exceptions. I shall do this in the case of Slack v. State, now pending.

My brethren, as I understand their opinion, have reached the conclusion that it is incumbent on the accused to show or prove that he is permitted by law to pursue the occupation of selling intoxicants in local option territory. They base their decision on the statement that the accused assumes and is charged with the burden of proving the exemptions set out in the enacting clause, first, because it is a negative averment, and second, because the facts are peculiarly within his knowledge and possession. I can not agree to either proposition as being correct in law or in fact, and the second proposition is absolutely at variance with and disproved by all the statutes in regard to carrying on the business of selling intoxicants in local option territory in Texas. Under the first proposition—that is, the accused must prove his exemptions from punishment—there are several reasons why this can not be the true rule in this State: First, because the decisions above cited settle the question against the proposition. I do not care further to review those cases in this connection. Second, whatever is necessary to be alleged as part of the offense, and is an ingredient thereof, devolves upon the State the burden of proof. Third, the burden of proof

never shifts to the accused. The State must prove its case to the exclusion of the presumption of innocence and reasonable doubt. Article 52, Penal Code. That article thus provides:

"On the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission."

This article clearly provides, first, the State *must prove the facts constituting the offense;* second, until the State *has proved such facts* it does not devolve upon the accused to establish any fact or circumstance "to excuse or justify the prohibited act or omission;" third, a conviction can not be had until the State *does prove by facts* that the accused has violated the statute under which he is prosecuted; fourth, the facts proved constituting the offense must be of sufficient cogency to overcome the presumption of innocence and the reasonable doubt; fifth, the accused is not required to prove any fact or introduce any evidence in aid of the State's case; sixth, the burden of proof does not shift from the State to the defendant. It is, therefore, a *legal sequence that the State must prove by facts* that the accused is guilty under the statute, the terms of which he is charged with violating. Whatever is necessary to allege and bring him within the inhibition of the statute is necessary to be *proved, and this by facts.* The fact that appellant may have sold intoxicants is not sufficient. It is necessary that he sells in some manner inhibited. He can not be guilty of *violating the law generally.* He must be charged with a specific offense, and such offense must be denounced by a statute. The allegation of the indictment must be as specific as are the terms of the statute, and the allegations must be plainly met *by proof of facts* with sufficient cogency to overcome the presumption of innocence and reasonable doubt. If an exemption is set forth in the definition of the offense, the State must show that the accused is not within that exemption. Until he is proved not to be within the exemption he is entitled to an acquittal. He is not called upon to prove that he is within the exemption, for this would be requiring of him to prove his innocence.

The second proposition asserted and relied on by my brethren is this: When facts are peculiarly within the knowledge of the accused it devolves upon him to introduce the same. And they further hold that under this statute under which appellant is indicted and convicted the facts are peculiarly within his knowledge. The rule asserted by my brethren obtains in some instances and under some statutes, or at least may obtain, but not so under the statute under discussion. I assert, without fear of contradiction, that it is not correct to say that the exemptions or exceptions contained in the statute under consideration are peculiarly within the knowledge of the defendant, and can not be. It is true, if he has taken out his license and paid the taxes to pursue the business, that he had knowledge of the fact that he did so. So it would be if he had stolen a horse or committed any other

crime, but in neither instance would he be required to give evidence against himself simply because he had knowledge of it, nor would he be guilty if he failed to give such information. The Constitution protects him wherein it says: "The accused shall not be compelled to give evidence against himself." I had thought that "the party whose contention requires proof of a negative fact has the *'burden of evidence' to prove that fact."* I had always thought, and so ascertained from the law, that where a negative fact or exception or exemption is in the enacting clause, it formed a part of the definition of the offense, and the "burden of proof" was and is on the prosecution to exclude the accused from the operation of such exception, otherwise no offense would or could be shown to have been committed. Sufficient number of authorities have been cited without addition of others. "Especially is this true when the allegation is of an omission by defendant of some duty imposed by law or a criminal neglect of duty or is a substantive part of a criminal charge." 2d vol. Ency. of Ev., p. 806, and notes for collated cases.

This is and has always been the rule in Texas. Cases, supra. In order to convict appellant, it is all sufficiently plain it must be shown that the local option law is in force; that he followed the business of selling intoxicating liquors in that territory, and did make the required number of sales, and all this without legal authority, and the burden is on the State to show all these facts. But although the negation or exception is a part of the definition of said offense, my brethren hold that the accused must show that he was authorized to sell. This shifts the burden of proof to him to show that he had authority to pursue the business of selling intoxicating liquors, and entirely destroys the presumption of innocence. A failure of proof as to either of the first three mentioned provisions of the statute would defeat the State's case. This I understand to be conceded in and by the majority opinion. In fact, the State would have no case unless it proved all three of those propositions, but under the view entertained by my brethren a refusal of appellant to prove authority to sell or a failure on his part to do so not only authorizes but demands his conviction. Are the facts that he is permitted to legally carry on the business peculiarly within the knowledge of the accused? Is it true that it is peculiarly known to him that he has complied with the law in paying his occupation tax, giving bond, securing license, and generally complying with the statutes authorizing the pursuing of the business of selling intoxicants in local option territory? If so, why and by what provision of law? Article 407a of the Penal Code provides that if the party has a United States revenue liquor license, the presumption will obtain that he is pursuing that occupation or engaging in that business. That article applies to local option territory by the terms of the statute, but there was no evidence of this character introduced on the trial. Therefore there is no presumption arising for this reason, and none to be indulged. That statute authorizes the legal presumption resulting from

the fact that the party having such license is pursuing the business. Under article 407a the State must show the accused has the license therein specified in order to secure the benefit of the presumption contained in the statute. The terms of that statute do not go further than to provide a prima facie case of pursuing the business named. It does not authorize finding the further fact that the accused did in fact sell intoxicants. The State is not relieved of the burden of proving the sales under that statute. The fact that the accused has such license from the United States government is much more peculiarly within his knowledge than is the fact that he has the legal right to sell in local option territory under State authority. There are several reasons why this is true, both as a matter of law as well as of fact. Among other reasons easily discernable are, first, the publicity required by the terms of the State statute in regard to pursuing this business; second, making all the steps taken by the seller requisite to such selling matters of public record in the offices of the clerks of the County and District Courts (White's Enlarged P. C., arts. 403, 404, et seq.); third, requiring all of these matters to be kept such as records and archives of said offices, for the inspection of the grand jury, district, county and justice precinct officers, and requiring the grand jury and the prosecuting officers to investigate these matters to the end that violators of the law may be prosecuted (White's Enlarged P. C., arts. 411g, 411h); fifth, because the duty is enjoined upon such officers to prosecute violators under the provisions of said laws (statutes above cited). An inspection of the provisions of these statutes with reference to selling intoxicants as an occupation or business in a local option territory will demonstrate the facts stated in the statute are not peculiarly within the knowledge of the accused, and can not be, and the further fact is clearly shown that the statute intended specifically that they should not be peculiarly within his knowledge. The statute, among other things, was enacted for the purpose of preventing this very result, and to place these facts of record where the officers should have full knowledge of them and by the terms of the statute are required to take cognizance. All of these matters are public records and are papers in the offices of the county and district clerks. When the accused is prosecuted under the terms of this statute, the indictment or information must allege and prove that he did not follow the provisions of the statute. Snead v. State, 55 Texas Crim. Rep., 583, and cases therein cited and discussed. That case was followed by Keith v. State, 58 Texas Crim. Rep., 418, and Sutphen v. State, 59 Texas Crim. Rep., 500, 129 S. W. Rep., 144.

The Act of 1897 sets out the necessary steps to be taken where parties desire to sell intoxicants in local option territory. Under the provisions of that act there is levied and collectible a tax from every person, firm or corporation, or association of persons, desiring to engage in selling intoxicants in local option territory. Before engaging in the business the party must file with the county clerk an application under

oath on a form furnished by the comptroller, and in it shall designate the place where he purposes selling, and if in a town or city he must give the street and number of house, and he must also state whether the intoxicants to be sold are malt or other kind of intoxicants. He must also pay the collector of taxes the full amount of annual taxes levied by the statute, and where the sales are. to occur in a city or town, the party shall in addition pay the required taxes to the collector of taxes of such city or town. In addition to all this, the statute requires a bond in the sum of $2,500 with ample surety, with stipulations and conditions as onerous as the acutely strenuous mind of the legislative body could devise. Among other things, that bond provides for heavy penalties for any and every infraction of its terms, and in certain contingencies its forfeiture and cancellation, and that a new bond be given. This bond is to be filed in the office of the county clerk of the county where the business is carried on "and recorded by him in a book" to be kept by him for that purpose. The prescriptions used as a basis for sales are to be canceled and kept by the party selling, and every month filed with the clerk of the District Court, accompanied by an affidavit stating that the seller has sold no intoxicants other than those named in the prescriptions filed. These prescriptions are required to be kept by said clerk for three years from the date of filing for the inspection of the grand jury, district, county and precinct officers. White's Enlarged Penal Code, article 403.

I deem it unnecessary to enumerate further the statutory requirements making every step and action of the party selling as a business a part of the public records and archives of the different named offices. They are by the statute made public records of the different offices and subject to inspection and investigation by the officers and the grand jury. Not only so, but the district judge must specifically charge the grand jury in regard to these matters. Rev. Civil Stats., article 3399. It is self-evident, therefore, that these matters are not, and in fact can not be, peculiarly within the knowledge of the accused, and it is equally as evident that all officers called legally to act in regard to these matters are required to have complete knowledge of these facts, and it is made their duty to prosecute for violations of the statute. There are to be found statutes perhaps fixing or regulating the manner of introducing evidence, and there may be provisions in some of them providing how this may be introduced, but that question does not and can not arise under the statute in question. There is no rule that has been called to my attention which provides that the accused party alone is the custodian of facts that are made public archives or records. Nor have I been cited to a rule that would hold such knowledge peculiarly within the keeping of the accused. Nor is it readily comprehended how he should be any better informed of the public records than can be the specified officers. They are specially and specifically made records for the use of the grand jury, and the district and county and precinct officers, to the end that the law may be en-

forced. They are records like other records of their kind and class, and are accessible as well to the State as to the defendant. The provisions of these statutes absolutely disproves the conclusions in the majority opinion. I have not mentioned, and deem it unnecessary to discuss, cases like sales to minors, as they are not applicable to the question here involved. They were decided upon a different rule.

I might pursue this line of thought indefinitely, but I have written more than I intended. Suffice it to say, in closing this phase of this dissent, that if it is the correct proposition that accused persons are to be convicted because they have knowledge of things of which the prosecution is either ignorant or uninformed, and these accused persons decline to give information of their knowledge to the State, then every party accused of crime can be convicted, because of the fact that he has knowledge of his legal sins or omissions. If it is proper and legal to convict because the accused does not reveal his crime, our laws have been operating on very erroneous lines in the history of our race and our jurisprudence. The Constitution provides the accused shall not be compelled to give evidence against himself, but under the majority opinion, if he does not do so, he will be presumed to be guilty, and must therefore be convicted. This court at all times reverses judgments of conviction if an allusion is made on the trial of the case to the fact that the accused failed to testify, but my brethren in effect now hold that if he does not testify, or give the State the benefit of his knowledge of facts that are held to be in his possession, he will be adjudged guilty of the crime charged for that reason. Not only is the burden shifted by this rule to the accused, but guilt is made certain if he fails to produce evidence that is within his knowledge. This eliminates the presumption of innocence, and changes the burden of proof, and mere silence or failure to produce evidence is by that course of reasoning made to overcome this presumption of innocence and reasonable doubt. Here an absurdity is found in the fact of affirming the judgment against the accused if he fails to testify or produce evidence of exculpatory facts, but if such failure to testify should be alluded to in the argument the judgment for that reason will be reversed. The judgment will, therefore, be affirmed upon appellant's failure to produce evidence, and be reversed if that fact is alluded to or discussed Judge Harlan, in Davis v. United States, 160 U. S. Rep., 469-487, uses this language: "The burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence, or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial, and applies to every element necessary to constitute the crime."

In 17 Mich., 9, Judge Cooley said: "There is no such thing in the law as a separation of the ingredients of the offense so as to leave a part to be established by the prosecution, while as to the rest the defendant takes upon himself the burden of proving a negative. The

idea that the burden of proof shifts in these cases is unphilosophical and at war with fundamental principles of criminal law."

These opinions emanated from two of the greatest jurists who ever graced the appellate courts of the United States, one the Supreme Court of Michigan, the other the Supreme Court of the United States. Both opinions enunciate undeniably legal and axiomatic truths. The principle announced by these two great jurists will be found surviving the wreck of panoramic legislation and revolutionary methods and policies. Legal evasions and technicalities have been and are being formulated to legalize enactments that ought to be held unconstitutional and illegal, and for the purpose of securing punishments in violation of correct principles, and overruling constitutional inhibitions. A review of the strenuous and far-reaching rulings and policies of the present time threatening our legal fabric, and invented or called into play to uphold more than doubtful legislation and even unconstitutional enactments, might prove at least fully entertaining if time permitted, and would reveal a most far-reaching tendency to break away from time-honored and recognized principles of law. The further fact would be as easily discovered, that if the old, worn-out, popular theory that technicalities were invented for the purpose and use to relieve from punishment those charged with crime, that these technicalities have been diverted from their popular acceptation and transferred to the office, and to fill the mission of upholding legislation which is subversive of the principles of correct jurisprudence, and to overturn constitutional guarantees. They are made to suit and foster the desire to create and multiply offenses such as the heretofore fairness, justice and manhood of our people never regarded as being within the domain of criminality. Contempt proceedings are resorted to to supplant the jury trial; rules are entered against parties compelling them to show cause why they should not be held in contempt of court for supposed or real penal offenses, and this proceeding is made to supersede indictments and trial by jury. By this means double punishment in the face of the constitutional inhibition is prescribed and enforced. Under this legislative provision a party may be convicted for an offense and punished, and the court is authorized to inflict another punishment for the same offense under contempt proceedings. The burden of proof is shifted from the State to the accused, and he is required to furnish evidence to prove his innocence. Silence before the jury is to be taken as evidence of guilt, and the accused is made peculiarly the repository of the knowledge of the contents of public records which may affect his guilt or innocence before the jury, and if he does not impart such information or knowledge to the jury, or the State, he is to be branded and convicted as a felon, and by this means deprived of all legal rights without due process of law.

I have in this opinion given some of the reasons why I should and do dissent.